224 So.2d 649

**R. D. WHEAT, etc., et al.**

v.

**J. Robert RAMSEY.**

**4 Div. 338.**

Supreme Court of Alabama.

June 12, 1969.

**296**

C. R. Lewis, Dothan, for appellants.

Ramsey & Ramsey, and J. Theodore Jackson, Dothan, for appellee.

J. Cecil Gardner, Montgomery, Fred Collins, Mobile, amici curiae.

MERRILL, Justice.

This appeal is from a decree in a declaratory judgment proceeding which held that Ordinance No. 3227 of the City of Dothan, which incorporated the Southern Standard Housing Code, was unconstitutional.

Appellee Ramsey filed his bill of complaint against R. D. Wheat, as the Building Official of the City of Dothan, and the City of Dothan, seeking a declaratory judgment that the Southern Standard Housing Code and Ordinance No. 3227 of the City of Dothan adopting said Code on November 16, 1965, are null and void, alleging the same to be unreasonable, discriminatory and invalid, that the city was without legal authority to adopt the Southern Standard Housing Code, that the Code provides for the taking of appellee's property without due process of law and that the Code pro-

vides for the taking of private property without the owner being afforded his day in court. Section 302 of the Southern Standard Housing Code requires that every dwelling unit shall contain not less than a kitchen sink, lavatory, tub or shower and a water heater, all in good working condition and installed in accordance with the Adopted Plumbing Code.

The Attorney General of Alabama was served, Tit. 7, § 166, Code 1940, accepted service of the bill of complaint and waived "further service thereof."

Appellants' demurrer was overruled, a stipulation was filed by all parties setting out the allegations admitted and denied by appellants and all testimony was taken by agreement of the parties before the official court reporter acting as commissioner. After the taking of testimony, appellee amended his complaint by alleging that the Southern Standard Housing Code and each section thereof, separately and severally, is unreasonable, discriminatory, invalid or unconstitutional; and appellants filed an answer to the amendment.

The cause was submitted to the court for final decree on August 28, 1968, and the court rendered a final decree on October 29, 1968, declaring and decreeing that the ordinance of the City of Dothan adopting the 1965 edition of the Southern Standard Housing Code, and particularly Section 302 of Chapter III of said Housing Code, was invalid and unconstitutional under the provisions of both the Constitution of the United States and the Constitution of the State of Alabama.

Appellee Ramsey, his only witness, testified that he owned the house and lot located at 906 Houston Street, in Dothan, Alabama, involved in this suit; that a few days before February 25, 1968, Mr. Clifford Lucas, the City Inspector, called him on the telephone and said he had made an inspection of said house and that in order to comply with the Building Code certain repairs should be made to the porches, to the floor and screens, and that the bathroom was not equipped with a proper switch and additional outlets would have to be installed in each room to meet the city's Electrical Code; that a kitchen sink, lavatory, tub or shower and water heater would all be required and that the area in the rear and litter in the yard should be policed and removed; that appellee told Lucas he was willing to make repairs he considered reasonable but that he was not willing to put in all this equipment and that they (meaning the city) would have to proceed; that a few days later, he got a certified mail letter from R. D. Wheat, the Building Official, referring to appellant's conversation with Lucas and notifying appellant that said requirements would have to be met and that appellee had a right to appeal to the Housing Board of Adjustments and Appeals. Appellee did give notice of his appeal to said board and on March 9, 1966, a hearing was held and the board voted three to one to sustain the findings of the Building Official and City Inspector; that appellee appealed from the decision of the board to the Circuit Court of Houston County and that the appeal was dismissed by the court on February 10, 1967, on motion of the city on the ground that such appeal could not be taken from the Housing Board of Adjustments and Appeals to the circuit court because no appeal was provided therefor by statute; that the Building Official, his agents, servants or employees took possession of appellee's property by nailing a sign on the front part of said house reading "This building is unsafe and its use or occupancy has been prohibited by the Building Official"; that, in his opinion as an attorney, each section of the Southern Standard Housing Code adopted by the city on November 16, 1965, is unreasonable, discriminating and invalid (here the pamphlet containing the entire Southern Standard Housing Code, 1965 Edition, adopted by Ordinance No. 3227 of the city was introduced in evidence by plaintiff as his Exhibit No. 2, and Ordinance No. 3227 was introduced by plaintiff as Exhibit No. 3); it was stipulated between the parties that appellee would

testify substantially the same reference to each paragraph contained in paragraph 10 of the complaint, from A to T; that he did clean up the litter in the yard; that in his opinion a person could connect a heater to an ordinary wood or coal stove or could put a tub of water on top of a stove and heat it and that the city has no right to say that a man can't do that; that he contends it is not necessary for the sanitation or health of the occupants of a house to have available therein a kitchen sink, lavatory, tub or shower, all in good working condition and installed in accordance with the Plumbing Code; that he grew up part of his life without a bathtub or shower.

Dr. J. L. Byrd, the only witness for appellants, testified that he was a medical doctor, served as Panama Canal Zone Health Officer from 1917 to 1953, and at the time of testifying, was Chairman of the Board of Censors (medical) and Chairman of the Board of Health of Houston County, Alabama; that public health authorities as far back as 1920 have recommended hand-washing facilities and baths in schools where homes were not well furnished with bathing facilities because personal hygiene plays an important part in the spread of contact diseases such as meningitis, diphtheria, poliomyelitis, scarlet fever, septic sore throat, whooping cough and many skin-type diseases which personal hygiene, with use of hot, soapy water during and following the termination of aforesaid diseases, will in most cases prevent the spread thereof; and that soap is most effective when used with hot water; that for public health reasons, medically speaking, hot water is necessary for effective cleaning of utensils and for the bactericidal treatment thereof and that hot water under pressure cleans quicker and cleaner than without pressure; that it is necessary for an individual to wash his hands in hot water and soap after using toilets whether in a public restaurant or a private home or dwelling in order to prevent the transmitting of diseases, including hook worms, gastrointestinal diseases, typhoid, paratyphoid, from one member of the family to the other; that the requirements of Section 302, page 15, Chapter III, of the Southern Standard Housing Code, 1965 Edition, in sub-section (b): "Each dwelling unit shall contain not less than a kitchen sink, lavatory, tub or shower and a water closet, all in good working condition and installed in accordance with the Adopted Plumbing Code," are reasonable requirements for public health and private health of the members of a dwelling house and are reasonably necessary for the health of the people inhabiting such dwelling house, and that such requirements are not discriminatory insofar as health is concerned.

Appellee insists in brief that the City of Dothan was without authority to adopt § 302 and that he was deprived of his property without due process of law since the ordinance was unconstitutional because it provides (1) no notice before the taking of the property, and (2) no provision for judicial review of the actions of the city.

◼ We first consider the authority of the city. It is axiomatic that it has only that authority given to it by the Legislature or the Constitution.

Title 37, § 462, Code 1940, as amended, authorizes the governing body of a municipality to adopt by reference thereto, without setting the same out at length in the ordinance, rules and regulations which have been printed as a Code in book or pamphlet form, for: (1) The construction, erection, alteration or improvement of buildings; (2) Installation of plumbing or plumbing fixtures; (3) Installation of electric wiring or lighting fixtures; (6) Health and sanitation.

It was stipulated by all parties that Ordinance No. 3227 passed by the Board of Commissioners of the City of Dothan on December 7, 1965, adopting the Southern Standard Housing Code, 1965 Edition, was legally and properly adopted and advertised as required by Tit. 37, § 462, as amended.

Title 37, §§ 491 and 492, Code 1940, provides:

"All cities and towns in this state shall have the power to maintain the health and cleanliness of the city or town within its limits and within the police jurisdiction thereof."

"In addition to the powers hereinbefore granted to them, all cities and towns of this state shall have the following powers, and the councils of such cities and towns may provide by ordinance, or resolution for the exercise or enforcement of the same: To prevent the introduction of contagious, infectious, or pestilential diseases into such cities or towns; to establish and regulate a sufficient quarantine not inconsistent with laws of the state in the towns and cities and within the police jurisdiction thereof, and to punish any breach of quarantine law; to adopt such ordinances and regulations as the council may deem necessary to insure good sanitary condition in public places or in private premises in the cities and towns, and to prescribe the duties and fix the salaries and compensation for such health officials as they may deem necessary."

In Spear v. Ward, 199 Ala. 105, 74 So. 27, this court said:

"The Legislature has the undoubted authority to authorize municipalities and cities to pass ordinances relating to any of the subjects of municipal regulation, except such as may be inhibited by the Constitution or our municipal form of government. The preservation of the public health by the installation and maintenance of sanitary systems of sewers and closets is well recognized as one of the most important duties of municipal governments, and falls clearly within the police powers of government, subject to which the inhabitant and citizen of the municipality holds his individual rights to property and to liberty.

"Consequently, statutes and ordinances dealing with and relating to such subjects, together with provisions for the enforcement thereof, will be indulged by the courts, with the presumptions in their favor, as to their necessity, propriety, and validity, in the absence of a showing to the effect that they are unreasonable, arbitrary, unduly oppressive, or inconsistent with the legislative policy of the state. It must be made to appear to the courts that this police power has been manifestly transcended or abused, before courts will set aside or declare void ordinances which are intended to promote the public health. The special provisions and the extent of such ordinances are matters usually, and almost of necessity, left in a large measure to the discretion and judgment of the municipal authorities. They have, of course, no absolute power to pass any arbitrary ordinance which their caprice or whim might desire; but the law does of necessity vest in them judicial discretion to be exercised reasonably, with regard to the circumstances of each particular case, the objects to be accomplished, and the existing necessity of the occasion.

\* \* \* \* \* \*

"As before stated, one of the most important objects of municipal government is the preservation of the public health; and science has demonstrated that nothing contributes more to secure the end than a sanitary system of sewerage and water-closets connected therewith; and the benefits of such a system are largely lost unless the inhabitants of the city can be compelled to connect their premises with the system, and to abandon dry closets and install water-closets. To this end the Legislature has clothed municipalities with the power and authority to pass ordinances, by-laws, etc. The municipal authorities to this extent exercise the police power of the state; and they not only have the power, but the law enjoins the duty and obligation on them, to promptly abate or remove all nuisances

by which the public health may be affected, and to thus provide for the safety, comfort, and convenience of the inhabitants. All the inhabitants therefore have an interest in seeing that proper ordinances are passed, as well as that, when passed, such ordinances are enforced against all, as the failure to conform thereto by a few may inflict injury and ill health upon the many. There are times when the public health is the object of paramount concern, and the law wisely lodges in municipal bodies discretion and power adequate to such emergencies. Such an emergency is shown by the answer of respondents in this case.

"Private property must be held subordinate to reasonable police regulations; yet lawful property cannot be destroyed or confiscated under the mere guise of police regulations for its protection. It does not appear to us that in this case there is shown anything which amounts to an unwarranted taking or confiscation of appellant's property, under the pretext of exercising a police regulation, such as was held to be shown in the cases relied upon by appellant. See Durgin v. Minot, 203 Mass. 26, 89 N.E. 144, 24 L.R.A., (N.S.), 241, 133 Am.St.Rep. 276; Phila. v. Prov. L. Ins. Co., 132 Pa. 224, 18 Atl. 1114; State v. Asbury Park, 61 N.J. Law 386, 39 Atl. 706; Eckhardt v. City of Buffalo, 19 App.Div. 1, 46 N.Y.Supp. 204."

In Gilchrist Drug Co. v. City of Birmingham, 234 Ala. 204, 174 So. 609, 111 A.L.R. 103, we said:

"And broadly speaking of the exercise by municipalities of this police power, we have approved the rule of the Supreme Court of the United States that where a given situation admittedly presents a proper field for the exercise of the power, the extent of its invocation and application is a matter which lies largely in legislative discretion, and the courts are loathe to substitute their judgment as to the necessity for a particular enactment for the legislative judgment with reference to its exercise. And if the question as to reasonableness is fairly debatable, the settled rule is that the courts will not substitute their judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. Or, more concisely stated, 'if men may reasonably differ in view of all the circumstances,' then the legislative action will be sustained. Leary v. Adams, 226 Ala. 472, 147 So. 391, 393. * * *"

See also McQuillan, Municipal Corporations, 3rd Ed. 1968 Revised, Vol. 7, §§ 24.-219, 24.221, 24.222.

■ Based upon the authorities cited, we hold that the governing body of the City of Dothan had the legal authority under its police power to adopt reasonable health and sanitation ordinances to protect the public health and promote the general welfare.

■ We come now to the contention of appellee that the ordinance or the Housing Code which it adopts is unconstitutional because it does not provide for notice. Section 103.2(a) provides:

"Whenever the Building Official shall find any building or structure or portion thereof to be unsafe, unsanitary, or unfit for human habitation, he shall in accordance with established procedure for legal notices, give the owner, agent, or person in control of such building or structure written notice stating the defects thereof. This notice shall require the owner, within a stated time either to complete specified repairs or improvements, or to demolish and remove the building or structure or portion thereof."

Appellee testified, as already shown, that he did have notice, both oral and written, of the alleged defects and shortages, that he complied with all of them except the installation of the sink, lavatory, water heater, tub or shower and that he was not willing to comply. We cannot agree that the ordinance did not provide for adequate notice or that appellee did not have such notice.

■ The contention that due process was denied because there was no provision in the ordinance for an appeal is likewise without merit. Section 107 of the Housing Code labeled "Appeals" provides for an appeal "from the decision of the Building Official to the Housing Board of Adjustments and Appeals." Section 108 provides for a hearing before such board, a recorded vote, and a written decision mailed to the party appealing and a public posting of the decision. Appellee in the instant case did appeal and was not successful.

Section 108.2(a) reads in part: "Every decision of the Housing Board of Adjustments and Appeals shall be final, subject, however, to such remedy as any aggrieved party might have at law or in equity."

■ The right to appeal is purely statutory, and an appeal taken without statutory authority must be dismissed for want of jurisdiction. Tarvin v. Tarvin, 266 Ala. 214, 95 So.2d 397; Coker v. Fountain, 200 Ala. 95, 75 So. 471. The Legislature determines the right to appeal to state courts and we are not informed as to any provision permitting an appeal from a decision of the Dothan Housing Board of Adjustment to a state court. The ordinance did provide for such appeal as it could—one to the Housing Board of Adjustments and Appeals —and then did the next best thing by making any decision of such board subject "to such remedy as any aggrieved party might have at law or in equity," courts over which the city had no jurisdiction.

"Proceedings by which the validity of an ordinance may be tested vary, of course, with local practice and procedure, but, generally speaking, include the following: (1) Any judicial proceeding, civil or criminal, legal or equitable, founded upon an ordinance or wherein the ordinance is directly involved; (2) injunction; (3) prohibition; (4) mandamus; (5) certiorari; (6) habeas corpus; (7) proceedings brought under 'declaratory judgment' statutes; and, in a few instances but not usually, (8) quo warranto." (Emphasis supplied.) McQuillin,

Municipal Corporations, 3rd Edition, Volume 6, § 20.22, p. 50. Appellee here followed the declaratory judgment route to have the decision in his cause reviewed in a court of equity.

A similar case arose in Kentucky. There, various owners, occupants and real estate agents filed a declaratory judgment proceeding challenging the validity of so-called "hot bath" amending ordinances of the City of Louisville, and the trial court, as here, held them invalid except as to new construction. The amending ordinances required that each dwelling unit be equipped with an inside bathroom including a toilet, lavatory basin and bathtub or shower, and further required that each kitchen sink, lavatory basin, bathtub and shower be connected to hot and cold water lines, with water heating facilities, and to the public sewer. These requirements were alleged to be unreasonable, exceeding the bounds of the city's police power, and therefore an unconstitutional invasion of the property rights affected. The trial court was of the opinion that the requirements were unreasonable, arbitrary and void under the 14th Amendment of the federal constitution and §§ 2 and 13 of the Kentucky Constitution.

The Court of Appeals of Kentucky in City of Louisville v. Thompson, 339 S.W. 2d 869, said:

"Whereas KRS Chapter 99 seeks to eliminate slums and blighted areas, the objective of the municipal requirements here in dispute is to prevent the development of such conditions. It would seem obvious that these two purposes have the same relationship to the public health, safety, morals and welfare. Therefore, the determination by this court in Miller v. City of Louisville, Ky.1959, 321 S.W. 2d 237, to the effect that slum clearance and urban renewal are within the legitimate scope of the police power applies with equal force to the minimum housing standards adopted by the City of Louisville. The only question is whether they are reasonable.

"Comparable regulations have been upheld as reasonable in all states where they have been tested in the courts of last resort, being Maryland, Massachusetts, South Carolina, and Wisconsin. Givner v. Commissioner of Health of Baltimore City, 1955, 207 Md. 184, 113 A.2d 899; Paquette v. City of Fall River, 1959, 338 Mass. 368, 155 N.E.2d 775; Richards v. City of Columbia, 1955, 227 S.C. 538, 88 S.E.2d 683; Boden v. City of Milwaukee, 1959, 8 Wis.2d 318, 99 N.W.2d 156.

\*   \*   \*   \*   \*   \*

"We are of the opinion that the minimum housing standards attacked in this litigation are reasonable and within the scope of the police powers of the City of Louisville and, specifically, violate neither the 4th, 5th or 14th amendment of the federal constitution nor sections 2, 13 or 242 of the Kentucky Constitution."

The decree of the lower court is reversed and one is here rendered holding that Ordinance No. 3227 of the City of Dothan, which adopted the Southern Standard Housing Code of 1965, is not unconstitutional as violative of due process for lack of provision for notice, or lack of provision for judicial review, or that the City of Dothan lacked the power to adopt the ordinance.

Having decided the case, we think it proper to mention the fact that Act No. 217, passed by the Legislature at the Extraordinary Session in 1969, and approved May 15, 1969, removes any doubt as to the legal authority of a city to adopt and enforce a Code or rules and regulations establishing minimum standards for buildings, dwellings and structures. It may be that the decision of the circuit court in the instant case prompted such a bill. We have not considered Act No. 217 in our decision but we do feel that its passage and approval should be noted in this opinion.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.